May Term,
1860.

COPLINGER
v.
THE STEAM-
BOAT DAVID
GIBSON.

COPLINGER *v.* THE STEAMBOAT DAVID GIBSON.

The water-craft law of *Indiana,* providing for the enforcement of liens on vessels, does not extend to contracts made and broken out of this state, and consequently an attachment suit will not lie for a breach of such a contract.

An action *in rem* would not lie at common law.

The law of a foreign state, where such a contract was made or broken, will not be enforced in a suit upon the contract in this state, unless the law be pleaded and proved, and even then, no further than our system of practice will enable the Courts to enforce it.

A suit *in personam,* as at common law, would lie, and the action would be transitory; but to maintain it, jurisdiction of the person would have to be acquired, either by service of process or voluntary appearance.

The filing of an attachment-bond, and taking depositions on behalf of a vessel, do not constitute a voluntary appearance to the suit, as one *in personam.*

*Semble,* that the plaintiff in an attachment suit under the statute, might move for leave to amend his complaint, and to have process against the person, so as to change his proceeding to a common-law action.

*Tuesday,
June 12.*

APPEAL from the *Jefferson* Circuit Court.

PERKINS, J.— *Coplinger* filed his complaint in the *Jefferson* Circuit Court, alleging that he shipped certain articles of freight upon the steamboat *David Gibson,* at *Cincinnati, Ohio,* to be delivered to one *Johnson,* at his landing in *Chicot,* state of *Arkansas,* for a certain consideration to be paid; that the articles were not delivered at said landing in *Chicot,* but were taken to and left at *New Orleans,* in the state of *Louisiana;* that damages accrued to him, by the breach of said contract, to the amount of 350 dollars, which, he prayed, might be enforced against said steamboat *Gibson,* then lying in the waters of the *Ohio* river, opposite *Jefferson* county, *Indiana.* The boat was seized by, and was bonded out from under, an attachment, in vacation, her master executing the bonds, who also took some depositions touching the case, during the vacation.

At the next term of the Court, when the cause was called, the plaintiff moved for a rule for an answer, and the defendant interposed a motion that the attachment be discharged or quashed, and the suit dismissed for causes then assigned.

The Court sustained the defendant's motion, and dismissed the cause.

This proceeding was instituted under the water-craft law of *Indiana;* but the case of *The Steamboat, &c.* v. *Richardson,* 9 Ind. R. 525, decides that that law does not extend to contracts made and broken out of this state. Perk. Pr., p. 520 (1). It is clear from the allegations of the complaint, that the contract described therein was made and broken out of this state.

Such a proceeding is not authorized by the common law.

But it was contended that the law of *Ohio* upon this subject was similar to that of *Indiana,* and that the Courts of *Indiana* would enforce the *Ohio* law. They might have done so, had the *Ohio* law been pleaded and proved; not otherwise. *Wilson* v. *Clark,* 11 Ind. R. 385. Even were the *Ohio* law pleaded in a given case, the Courts of this state would not enforce it further than our own system of judicial proceedings would enable them to do so. *Doe* v. *Collins,* 1 Ind. R. 24. See 4 Am. Law Reg., pp. 119, 747.

The pending suit could not, then, be maintained against the boat, and the attachment was rightly quashed.

Was the suit rightly dismissed?

A suit *in personam,* as at common law, could be maintained on the cause of action described in the complaint; and the action would be transitory; but to maintain it, jurisdiction over the person would have to be acquired, either by service of process, or the voluntary appearance of the party.

The filing of the bond and taking of depositions in this case, did not constitute a voluntary appearance to the suit, as one *in personam.* Ind. Dig., pp. 126, 154.

When the attachment was quashed, then, there was on file in the Court simply a complaint for an attachment. For that purpose, it was unavailing, and should not encumber the docket. Had the plaintiff interposed a motion, before the cause was dismissed, for leave to amend his complaint, and for process against the person, so as to

May Term,
1860.

COPLINGER
v.
THE STEAM-
BOAT DAVID
GIBSON.

have changed his proceeding to a common-law action, per-haps such a motion should have been granted.

*Per Curiam.*—The judgment is affirmed with costs.

*H. W. Harrington,* for the appellant (2).

*W. M. Dunn* and *A. W. Hendricks,* for the boat (3).

(1) 2 R. S. p. 183.

(2) Mr. *Harrington* contended that when the master or other person appears and bonds out the vessel, the action becomes personal; that the Court did not pass upon this point in *Carson* v. *The Talma,* 3 Ind. R. 194, decided under the statute of 1843. That the complaint does not show that the contract was made out of the state, and that there is no legal presumption that it was made in another state. 2 Hill, 201. That the case of *The J. P. Tweed* v. *Richards,* 9 Ind. R. 525, was disposed of upon the proof and the merits; that in that case no part of the contract was to be performed within the waters of this state, and there was no proof that the laws of *Louisiana* or *Tennessee* gave a lien upon the boat, &c. That the attachment was erroneously set aside; that the *lex loci contractus* may control even where the contract is to be performed and is broken wholly in another state, *i. e.* if the *lex loci* gives the right, and the *lex fori* a remedy, that remedy may be enforced in our state. 9 Ind. R. 525. —Story's Confl. of Laws, § 3226. That upon the motion to quash the attachment, and before the decision, the appellant produced before the Court an authenticated copy of the statute of *Ohio* giving the remedy against the boat; and read it in the argument, the issues not then being formed, and the same is before this Court. That if the attachment was properly set aside, it was error to dismiss the entire action; that the case was not like a foreign attachment, a party having appeared, and, by giving bond, changed the action from one *in rem* to one *in personam.* 6 Blackf. 291.—2 Ind. R. 535.—1 *id.* 121. That, hence, if the complaint was substantially defective, the defendant should have demurred. That the objection that the plaintiff could not bring the action, was not tenable, even if it could have been made upon motion. *Hancock* v. *Ritchie,* 11 Ind. R. 48.

(3) Messrs. *Dunn* and *Hendricks, contra:*

That this water-craft lien law applies only to contracts made in this state, or, at least, those made with reference to the laws of this state, is a proposition now well settled. *The J. P. Tweed* v. *Richards,* 9 Ind. R. 525.—*The Steamboat Champion* v. *Jantzer,* 16 Ohio R. 91.—*Goodsill* v. *The Brig St. Louis,* 16 *id.* 178.

The general principle that such statutes can have no extra-territorial operation has long been well established.

As long ago as 1820, this Court held that our statute making certain words actionable, could not be applied to words spoken out of the state. 1 Blackf. 71. It is "held that a statute giving damages to a personal representative, or to surviving relatives for destruction of life, has no extra-territorial effect." *Campbell* v. *Rogers,* in the Superior Court of *Cincinnati,* 4 Am. Law Reg., 747. Many similar cases might be cited.

May Term,
1860.

COPLINGER
v.
THE STEAM-
BOAT DAVID
GIBSON.

But it is said that the complaint does not show that this contract to transport was made without the state of *Indiana*. Here we differ upon a point of fact simply, and ask that the question be tried by the record. As we read the complaint, it shows that the property was shipped at *Cincinnati, Ohio*, to be transported to *Johnson's* landing in *Arkansas*, in which last-named state the contract is alleged to have been broken. The complaint certainly says, "and that the said *McKinley*, captain at said time of said boat, received said property on board said steamer at *Cincinnati, Ohio*, and agreed to carry the same from said place to said *Johnson's* landing aforesaid." The complaint shows where *Johnson's* landing is, viz., in the county of *Chicot*, and state of *Arkansas*, and opposite to *Point Worthington*, in *Mississippi*.

But it is suggested that as the boat in performing her voyage, must necessarily navigate the river border of this state, she therefore became liable to the laws of *Indiana*. We will not here stop to argue that the *Ohio* river bordering upon this state, is not within it, and forms no part of it; that its north-eastern low-water mark bounds our territory; that it is a common highway along our border, the fee simple or ultimate dominion of which, beyond low-water mark, is in *Kentucky*, though *Indiana* has a limited jurisdiction over it. We will not, either, attempt to point out the intolerable confusion and evil that would result, if it should be established that a contract of affreightment made in *Ohio*, to be performed in *Arkansas*, is subject to the local laws of each and every riparian sovereignty along whose borders the boat must pass in performing her voyage. We will only, upon this point, say that we know of but two jurisdictions whose laws have been allowed to govern contracts, viz., the laws of the place of the contract, and those of the place of performance. We need not here inquire which law would govern in this case. The result here would be the same, whether the law of *Ohio* or that of *Arkansas* applies. This proposition of plaintiff's counsel seems to us to be entirely novel, and he has not thought it necessary to fortify it either by authority or reasoning.

But it is said that a motion to dismiss would not lie; that although the action was at first *in rem*, yet a bond being filed and the boat discharged, it became a proceeding *in personam* against the master. This is true. It was so held under the water-craft law of 1843, and the decisions are equally applicable under the present code. But it is also true that under the code of 1843, the same use was made of the motion to dismiss, that was made in this case, and that the practice was held correct in this Court.

It is true, that after bond filed, the action became personal against the master, but for what? Certainly for any claim that may be established under the statute against the boat, and no other. The legal effect of his bond, and of the judgment *in personam* against him, is that he shall respond personally to any claim that the boat would have been subjected to had she remained in the custody of the law. It does not become a personal action to enforce any personal claim that may have existed previously against the master, but simply to enforce against him personally any claim that may be found a lien under the statute against the boat. It surely would not be pretended that after a boat has been attached, say, as for supplies furnished, and the master has procured her release by substituting his own bond with surety, the plaintiff might go on to prove any individual claim against him or the owners of the boat, though constituting no lien under the statute against the boat. This would render the water craft law an efficient machinery for fictitious commencement

May Term,
1860.

COPLINGER
v.
THE STEAM-
BOAT DAVID
GIBSON.

of suit, and might seriously confound the statutes giving to the Courts their jurisdiction over the persons of defendants. The bond may be given by the defendant herself, or by the master, owner, or consignee, and its condition is, "that the defendant will perform the judgment of the Court." 2 R. S. p. 184, § 661.

This clearly indicates the truth of what we contend for, viz., that the substituted defendant is liable *in personam* only for whatever judgment the vessel herself would have been liable for, if she had not been bonded out and discharged. In 1 Ind. R. 123, the Court, speaking of a water-craft attachment-bond, say: "It was, in most respects, similar to an appeal-bond, and upon non-payment of the proper judgment in the attachment suit, its conditions would have been broken." We understand that such a bond covers only such claims as exist against the boat—that is, such claims as the statute makes liens upon the boat, and for the recovery of which the boat may be sued as a person. If this is true, it must necessarily follow that when the attachment is discharged, the action goes out of Court—nothing remains to be adjudicated upon. If it may still proceed *in personam* against the substituted party, then there is no practical difference between an attachment authorized by statute, and one not authorized—between one regularly issued, and one irregularly issued. In either case, the master or owner is compelled to give bond to obtain restitution of the boat, or to have her tied up in port while the suit is pending. If he does give bond, it matters nothing, according to this doctrine, whether there was any lien under the statute against the boat or not, provided there existed a personal lien against the master or owner. By virtue of the attachment, as it is claimed, the Court has obtained jurisdiction to try the personal claim against the master or owner, even though the attachment was utterly unauthorized by law, and notwithstanding the Court might have had no jurisdiction of the person of the master or owner by reason of his residence, if the suit had been brought in the ordinary way. *The Lawrenceburgh Ferry-Boat* v. *Smith*, 7 Ind. R. 520, shows that the personal judgment must be for whatever the boat would have been liable for *in rem*, had there been no substitution. There *Pratt* neither owed, nor was liable for anything personally. If in such case, the judgment is rendered against the boat, it is considered but a formal error. *Ibid.*

When it is urged that a motion to quash an attachment will not lie after a natural person has come in as defendant, we simply answer that it is decided differently. *Carson* v. *The Talma*, 3 Ind. R. 194. The practice of moving to quash is familiar in all cases of seizure either of property or person. This being entirely a statutory proceeding, the attachment should appear on the face of the proceedings to be authorized by the statute. A steamboat can be treated as a person, only where the statute clearly authorizes it to be so treated. If the complaint on which the attachment is issued, shows that the proceedings were not within the statute, and that the seizure was unlawful, a motion to quash is obviously proper.

But it is said that in this case the motion came too late, and was waived—

1st. Because the boat had been bonded out in vacation.

2d. Because the parties had taken depositions in the case in vacation.

As to this first reason for the objection, it is set at rest by the case in 3 Ind. R. 194. It is true, as stated, that that decision was made under the statutes of 1843, but it is equally applicable to the similar provisions of the present code.

Where an irregular attachment might be made in vacation of Court, it would be most unreasonable to say to the owner of a boat, "you must either waive this irregularity, or suffer your vessel to remain in custody, rotting in the docks, until Court meets." It is but reasonable that he should be allowed to give security equivalent to the boat herself for the performance of any judgment that might go against the boat, and then come into Court with the same rights he would have if the boat was still held by the sheriff. This course operates hardship upon neither party. In procuring restitution of his boat, he only admits that she was attached, not that she was regularly attached. He waives no irregularity, for he has no opportunity to complain of any, and, hence, it is decided as in 3 Ind. R. 194.

As to the other reason assigned for the position that the right to the motion was waived, viz., that the parties had taken depositions in the case, we have only to say that this is the first time we ever heard it suggested that taking depositions in vacation is an appearance to the action.

Again, it is urged by plaintiff's counsel, that though a lien may not exist on the boat, under the statute of this state (although he says in his brief that the proceedings were commenced under the *Indiana* statute), still the proceedings would lie under the *Ohio* statute, and that statute was brought to the attention of the Circuit Court, by being read to the Court by plaintiff's counsel in his argument.

We do not feel called upon here to discuss the question whether this proceeding might or might not have been maintained, if it had been commenced in an *Ohio* Court. We merely submit, first, that the *Ohio* statute was neither pleaded nor proved in the Circuit Court; and, second, that if it had been, our Courts would not enforce the peculiar remedies known to the practice of other states.

Suppose the pleadings had gone on to issue in the Court below, and the plaintiff had replied the *Ohio* statute. This would have been bad—

1st. Because it would have been a departure—the complaint counting upon a lien under one law, and the reply upon a lien under another.

2d. It would have been an attempt to enforce in *Indiana* not only a right springing out of an *Ohio* statute, but to do so by means of the peculiar machinery prescribed by the *Ohio* legislature to the *Ohio* Courts. This could not have been allowed. 16 Ohio R. 180.

But it is unnecessary to speak of what might have been or might not have been done, since the fact is that the suit was commenced under our own watercraft law, and the *Ohio* law was, in no legal sense, before the Court at all.

This whole case, then, is simply this: The plaintiff files a sworn complaint against the boat, showing a contract made in *Ohio*, to be performed in *Arkansas*, and broken in *Arkansas*. He has the boat seized under his attachment in vacation, and *McKinley*, the master, gives bond to the sheriff, and obtains her discharge. At the first term, and on the first calling, the defendant moves to quash the attachment, because the complaint shows no facts bringing the case within the statute authorizing such attachment, and the motion was sustained.